6758

ENTZMINGER v. SEABOARD AIR LINE RY.

1. NEW TRIAL.—A judge is not required to grant a new trial merely because he would have found a different verdict than the jury.
2. VERDICT—NONSUIT.—The point that there is no evidence to support a cause of action for punitive damages must be made either by motion for nonsuit or by request to so instruct the jury.
3. RAILROAD—PASSENGER—PUNITIVE DAMAGES.—That a passenger was put off at the wrong station, and that station agent and porter both tried to stop the train upon discovery of the mistake, is some evidence from which jury may infer wilfulness.
4. EVIDENCE.—OPINION of a witness as to degree of wilfulness of which servants are guilty in action for wilful tort is incompetent.

Before HYDRICK, J., Bamberg, winter term, 1907. Affirmed.

Action by J. F. Entzminger against Seaboard Air Line Railway. From judgment for plaintiff, defendant appeals.

*Messrs. E. T. LaFitte* and *W. H. Lyles,* for appellant. *Mr. LaFitte* cites: *Where verdict exceeds actual damages new trial should be granted:* 45 S. C., 490. *This Court may*

*grant new trial when there is no evidence of punitive damages:* 64 S. C., 569. *When punitive damages may be awarded:* 35 S. C., 210, 493; 54 S. C., 498. *Error to rule out opinion of plaintiff as to degree of willfulness of defendant's servants:* 19 S. C., 525; 18 S. C., 510. *Judge intimated his opinion to jury:* 76 S. C., 63; 47 S. C., 488.

*Messrs. Thurmond & Timmerman,* contra, cite: *Refusal of new trial was proper:* 69 S. C., 160. *Evidence warranted punitive damages:* 5 Ency., 562; 77 S. C., 473; 65 S. C., 444; 75 S. C., 286; 53 S. C., 213.

February 22, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. With the purpose of going to Denmark, S. C., J. F. Entzminger, on the night of 24th December, 1906, boarded the defendant company's north-bound train at Jacksonville, Fla. He gave the necessary mileage to the conductor and requested him, and later the pullman porter, to wake him at Denmark. The conductor promised to see that his request was complied with. Instead of being put off at the proper place, Entzminger was awakened by the porter, who told him Denmark was next station, and when the train stopped put him off at the station which proved to be Govan, a small place nine miles from Denmark. It was very early in the morning and dark, the passengers had alighted and the train was just drawing out, when the plaintiff, perceiving the mistake, immediately rushed after the train and cried to the porter on the back platform, "This is not Denmark; stop the train," and, seeing the station agent with a lantern, called him to wave the train down.

Several witnesses, including the station agent, testified the porter pulled the bell-cord, but neither this nor the waving of the agent's lantern was of any effect in stopping the train. The plaintiff had to make connection that morning at Denmark with the Southern Railway's train to Augusta in order that he might meet some pressing personal engage-

ments that afternoon, 25th December, at Aiken, S. C. He was much wrought up and troubled at the prospect of missing his connection, and after considerable trouble succeeded in hiring a team to take him to Denmark. He testified that owing to defendant's negligence in putting him off at the wrong station, he was exposed to the bitter cold weather on his ride to Denmark, was made sick and rendered unable to attend to his duties for several weeks, thereby undergoing serious physical and mental suffering.

This action was brought for actual and punitive damages against the defendant company, and tried at the March term of Court of Common Pleas for Bamberg County. The defendant's counsel admitted actual damages but contested the cause of action for punitive damages. Upon the jury's rendering a verdict for five hundred dollars for the plaintiff, the defendant made a motion for a new trial, which the trial judge refused.

The first exception alleges error in that the Circuit Judge abused his discretion in not granting a new trial, "his Honor saying at the time *that he was satisfied the damages were excessive,* and had he decided the case he would not have given so much." In refusing the motion to strike out the portion of the exception above italicized, the Circuit Judge, in an order appended to the "Case" explains his expressions as to the verdict as follows: "Appellant's attorney evidently misunderstood my remarks in refusing his motion for a new trial. I did not say the verdict was excessive in the legal sense of the word. If I had thought so I would have reduced it. In response to the argument of the appellant's attorney, I said, in substance, that the verdict was larger than I would have probably given if I had been on the jury, but that I would not, in cases like this, set aside a verdict merely because it was more or less than, in my opinion, it ought to have been, for if I did so, very few would stand."

"It is too well established for discussion that a trial judge is not required as a matter of law to grant a new trial merely

because his finding would have been different from the verdict of the jury." *Beaudrot* v. *Ry. Co.,* 69 S. C., 160, 168, 48 S. E., 106.

There was no error in refusing motion for a new trial made on the ground of entire lack of evidence to support a verdict for punitive damages. The action was commenced and the tort was committed after the adoption of the following rule of the Circuit Court: "The point that there is no evidence to support an alleged cause of action shall be first made, either by a motion for nonsuit or a motion to direct a verdict; and the point that there is no evidence to support a defense shall be first made by a motion to direct a verdict." It is fatal to the appeal on this ground, that there was no motion for nonsuit nor request to instruct the jury that there was no evidence to support a verdict for punitive damages.

But aside from that, the motion was properly refused on the merits. Possibly, it would be correct to say the act of a porter in the very early morning in the mistaking one station for another should be attributed to negligence rather than wantonness; but in this case after the mistake was made, attention was called to it in time to stop the train in a very short distance from the station and allow the passenger to get on again. The evidence furnished reasonable ground for the jury to draw the inference that the call to stop the train was heard and the signal observed and that the servants of the defendant failed to have the train stopped though aware of the plaintiff's predicament. *Ford* v. *Ry.,* 75 S. C., 286.

The exception to the trial judge ruling out the question asked by counsel for the defendant, as to the plaintiff's opinion of the degree of willfulness shown by the train crew cannot be sustained, since it pertained to the merits of the cause, which was then on trial before the jury.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.